IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
**Alexandria Division**

| | |
|---|---|
| **MAJOR GENERAL THOMAS P. HARWOOD III** 1402 Middlebury Drive Alexandria, VA 22307 <br><br> **Plaintiff,** <br><br> v. <br><br> **AMERICAN AIRLINES, INC.** 4333 Amon Carter Blvd., MD 5675 Fort Worth, TX 76155, <br><br><br> Serve Registered Agent: **CT CORPORATION SYSTEM** 4701 Cox Road Suite 285 Glen Allen, VA 23060, <br><br> **Defendant.** | Case No._____ |

**CIVIL COMPLAINT FOR EQUITABLE
AND MONETARY RELIEF AND DEMAND FOR JURY TRIAL**

**Introduction**

1.      This is a Civil Action filed by Major General Thomas P. Harwood III ("Harwood") against American Airlines, Inc. ("AA"), a Delaware corporation, brought under the Uniformed Services Employment and Reemployment Rights Act of 1994, 38 U.S.C. §§ 4301–4335 ("USERRA").

2.      Harwood alleges that AA violated USERRA when AA failed to immediately reemploy him after returning from a period of military service on or around

August 31, 2015 and to only reemploy him after complying with prerequisites not found in the law.

3.      Harwood also alleges that AA denied him a benefit of employment in violation of USERRA by failing to treat him as if he had been continuously employed in lieu of his military service, denying access to the provisions of the governing Joint Collective Bargaining Agreement, including access to his accrued sick leave after he returned from a period of military service on or around August 31, 2015.

4.      Harwood also alleges that AA declined to accommodate Harwood's disability and failed to place Harwood in a position equivalent in seniority, status, and pay when on or around August 26, 2015, AA denied Harwood reemployment until he possessed a valid First Class Medical Certificate and when AA offered Harwood a position in the Flight Technical Operations Group at the AA Flight Academy in Fort Worth, Texas, on or around January 21, 2016.

## JURISDICTION AND VENUE

5.      Jurisdiction of this Court is invoked pursuant to 38 U.S.C. § 4323(b)(3) of USERRA.

6.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3) because this is an action arising under the laws of the United States, specifically USERRA.

7.      This Court has personal jurisdiction over AA since it has substantial contacts with and transacts significant business in the Commonwealth of Virginia and in this judicial district.

2

8.        Venue in this judicial district and division is appropriate pursuant to 28 U.S.C. § 1391(c) because AA conducts business, and thus has contacts that would be sufficient to subject it to personal jurisdiction, in Arlington, Virginia.

9.        Venue in this district and division is appropriate pursuant to 38 U.S.C. § 4323(c)(2) because AA maintains a place of business in Arlington County, Virginia.

## PARTIES

10.        Harwood is a resident of the Commonwealth of Virginia and resides at 1402 Middlebury Drive, Alexandria, Virginia 22307.

11.        AA's principal place of business is located at 4333 Amon Carter Boulevard, MD 5675, Fort Worth, Texas 76155.  AA is a foreign corporation doing business in Virginia and incorporated under the laws of the State of Delaware.

## FACTUAL ALLEGATIONS

12.        Harwood is and was, at all times relevant to this Complaint, an AA employee.

13.        Harwood is a decorated general who has devoted a lifetime of service to our country with the United States Air Force.  He is a distinguished graduate of the Air Force Academy, where he earned a Bachelor of Science degree in economics in 1981.  Harwood was awarded a Kennedy Fellowship following graduation and attended the John F. Kennedy School of Government at Harvard University from 1981 to 1983, finishing with a master's degree in public policy.

14.        Harwood completed undergraduate pilot training at Williams Air Force Base, Arizona, in 1984, and served on active duty as an F-15 Eagle pilot and T-38 Talon II instructor.  In 1991, Harwood joined the Air Force Reserve at Luke Air Force Base, Arizona,

converting to the F-16 Fighting Falcon.  Harwood completed seven combat deployments as a member of the 944th Fighter Wing, with missions in Bosnia, Iraq, and Afghanistan.

15.     Since 2007, Harwood has served as a mobilization assistant in Air Education and Training Command, Pacific Air Forces, and Headquarters U.S. Air Force. Harwood has experience as an Air Component Commander in five Joint Chiefs of Staff-level exercises and two Presidential visits, and also served as Chief of Staff for Air Forces Pacific during Operations Tomodachi and Pacific Passage in 2011.  Harwood served as the Chief of the U.S. Military Training Mission to the Kingdom of Saudi Arabia from July 2013 to July 2015.

16.     AA is a Delaware corporation with over 100,000 employees and office locations in the Commonwealth of Virginia and other states.  AA is headquartered in Fort Worth, Texas.

**A.  AA Hires Harwood**

17.     Harwood began working for AA as an airline pilot on or around November 24, 1992.

18.     Harwood completed DC-10 Flight Engineer training and line flying from around January 1993 through September 1993 out of Los Angeles International Airport in California.

19.     In or around October 1993, AA furloughed Harwood.

20.     In or around August 1996, AA rehired Harwood.  Harwood then trained as a B-727 Flight Engineer and flew out of Dallas/Fort Worth International Airport in Texas.

**B.  AA Begins Discriminating Against Harwood Because of His Military Service**

4

21.        In or around summer 1997, Ruben Garza, AA Dallas Flight Office, twice told Harwood that AA would not permit him to take "so much military leave" and that Harwood would "have to decide if [he is] going to play solider or be an airline pilot." Garza failed to produce a written policy supporting his position that Harwood's military leave was excessive.

22.        From around October 7, 1997, to August 31, 1998, Harwood performed one year of military service, in part to remove himself from AA's continuing anti-military harassment.

23.        In or around 1998, Harwood returned to work for AA at Los Angeles International Airport,.  AA continued to criticize Harwood for his military service.

24.        In or around late 1998 or early 1999, AA removed Harwood from its payroll for three weeks while Harwood performed alternate weeks of military service. Harwood disputed this and brought the matter to the attention of Chief Pilot Bob . Bush resolved the matter internally.

25.        In or around 2000, Harwood was promoted to B-757/767 First Officer and received an Airline Transport Pilot certificate.

26.        From around 2000 through 2011, Harwood flew domestic and international flights for AA out of Los Angeles International Airport.

27.        Throughout this time period, Harwood completed various assignments with the U.S. Air Force while employed with AA.

C.        In or around 2011, AA transferred Harwood to New York, where he flew domestic and international flights from John F. Kennedy International Airport.**Harwood's Period of Military Service Ending on August 31, 2015**

28.     In or around June 2013, Harwood began a period of military leave to serve as the Chief of the U.S. Military Training Mission to Saudi Arabia, U.S. Central Command, in Riyadh, Saudi Arabia.

29.     During this period of service, AA classified Harwood as being on a military leave of absence ("MLOA").

30.     In or around December 2013, Harwood was diagnosed with atrial fibrillation after a routine physical examination.  Harwood has no clinical symptoms associated with his condition, but he nevertheless underwent two procedures to correct it in or around December 2013 and August 2014.  These procedures were unsuccessful.

31.     On or around June 3, 2015, Harwood contacted AA's New York Flight Office via email to provide them with his estimated return date of September 20, 2015, and to request a new bid status as a 737 domestic Captain in New York.

32.     On or around July 13, 2015, Harwood received Separation Orders from the U.S. Air Force with an effective date of August 31, 2015.

33.     On or around July 23, 2015, Harwood informed AA's New York Flight Office via email that his period of military service would end on August 31, 2015.

34.     On or around July 25, 2015, Harwood again contacted AA's New York Flight Office via email and provided them with a copy of his Separation Orders.

35.     On or around July 28, 2015, Ken Blessum, AA Senior Analyst of Crew Planning and Analysis, contacted Harwood via email and instructed him to contact Sue Kalosa, AA's Manager of Flight Administration.

36.     On or around July 29, 2015, Harwood contacted Kalosa via email to confirm his request to return to New York as a 737 domestic Captain.

6

37.      On or around August 3, 2015, Kalosa confirmed Harwood's expected return on August 31, 2015, to LaGuardia Airport in New York as a 737 domestic Captain. Kalosa advised Harwood that he would soon hear from the Training Department with a training start date.  Kalosa also instructed Harwood that he would need to secure a First Class Medical Certificate in order to begin this new role.  Previously, Harwood only needed a Second Class Medical Certificate.

38.      Thereafter, Harwood sent the New York Flight Office copies of his Activation and Separation Orders.

39.      On or around August 5, 2015, the U.S. Air Force asked Harwood to attend a Joint Flag Officer Warfighting Course from September 13 to 18, 2015 to qualify him as a Joint Force Commander, which was crucial to Harwood's new Reserve position as Mobilization Assistant to the Commander Pacific Air Forces.

40.      On or around August 7, 2015, as a professional courtesy so that AA could adjust his training schedule accordingly, Harwood informed the New York Flight Office of the required course and the need for him to take military leave from September 13 to 18, 2015.

41.      On or around August 10, 2015, Harwood and Lorraine Sutera, AA New York Flight Administration, exchanged a series of emails regarding Harwood's expected return to AA and his upcoming period of military leave from September 13 to 18, 2015. Sutera advised Harwood that AA would "bring [him] back on payroll September 1st."

42.      On or around August 20, 2015, AA assigned Harwood a training schedule that did not consider Harwood's planned period of military leave from September 13 to 18, 2015.

### D. Harwood Experiences Complications With His First Class Medical Certificate

43.      On or around August 20, 2015, Harwood contacted Kalosa via email and advised her that he was having difficulty obtaining the requisite First Class Medical Certificate, which would likely affect his anticipated start date.

44.      In or around late August 2015, Harwood worked to complete a package of medical tests to be sent to the Federal Aviation Administration ("FAA") Medical Office in Oklahoma City, Oklahoma, through the Pilot's Union Aeromedical advisor.  Harwood then applied for a First Class Medical Certificate with an Aviation Medical Examiner ("AME"), a Northern Virginia-based physician in private practice.

45.      Thereafter, the AME advised Harwood that Harwood would need a waiver from the FAA in order to fly.

### E. AA Fails to Reemploy Harwood After His Military Service

46.      On or around August 26, 2015, Jerry Shaw, AA New York Flight Administration, advised Harwood that AA would not reemploy Harwood until Harwood possessed a valid First Class Medical Certificate.  Accordingly, Harwood requested from AA consideration of his rights under USERRA, and requested assistance in working through his medical condition after he was placed back on AA's payroll.  Shaw informed Harwood that AA policy prohibited AA from reemploying Harwood.

47.      On or around August 27, 2015, Kalosa called Harwood and further explained AA's policy requiring pilot service members to possess a valid First Class Medical Certificate prior to reemployment.  Kalosa informed Harwood that AA would keep Harwood on MLOA status until he obtained an FAA waiver.

8

48.     Kalosa could not explain how AA could keep Harwood on MLOA without valid military orders, and when Harwood asked to see AA's policy in writing, she indicated that Harwood would have to "elevate the issue."

49.     On or around September 1, 2015, Harwood contacted Scott Hansen, AA Director of Flight Administration, requesting that Hanson confirm Harwood's reemployment eligibility.  Hansen replied that: "You will be returned to active employment based upon your notification to the company and presuming you meet USERRA guidelines and company policy for re-employment.  So long as you have a current and valid medical, and are available for training, you're good to go."

50.     In response, Harwood indicated to Hansen that AA's policy appeared to violate USERRA; specifically, 38 U.S.C. § 4312 ("Reemployment rights of persons who serve in the uniformed services"), by adding a requirement to possess a valid First Class Medical Certificate prior to reemployment that is not found in USERRA.

51.     On or around September 4, 2015, Hansen affirmed that AA would extend Harwood's period of military leave until Harwood could obtain an FAA waiver, but AA declined to reemploy Harwood.

52.     On October 22, 2015 — more than six weeks after Harwood's active military service ended — AA offered to reemploy Harwood conditioned upon his return to a different position in the Flight Technical Operations Group at the AA Flight Academy in Dallas, Texas, a position that is not equivalent in status, pay, and seniority to Harwood's prior position.  AA maintained its refusal to reemploy Harwood as a pilot until he obtained the First Class Medical Certificate.

53.        From September 1, 2015, until January 26, 2016, AA failed to reemploy Harwood did not have access to his AA income, benefits or accrued hours of sick leave.

**F.   Harwood's Period of Military Service Ending on January 7, 2016**

54.        Harwood began new active duty orders with the U.S. Air Force on November 16, 2015, after AA continually declined to reemploy him.  Harwood advised AA of his intention to begin new active duty orders on or around November 9, 2015.

55.        In or around early November 2015, Harwood completed a nuclear stress test at FAA's request to support his request for a waiver.

56.        On or around December 21, 2015, Harwood also completed an echocardiogram at FAA's request to further support his application for a waiver.  That same day, Harwood advised AA that he would again present himself for reemployment on January 8, 2016, after his period of military service with the U.S. Air Force ended.

57.        Harwood completed his active duty orders with the U.S. Air Force on January 7, 2016.

58.        But, AA again failed to reemploy Harwood as a pilot.

59.        Instead, on or around January 21, 2016, AA reoffered Harwood a position in the Flight Technical Operations Group at the AA Flight Academy in Dallas, Texas, a position that is not equivalent in status, pay, and seniority to Harwood's prior position.  In order to mitigate his damages, Harwood accepted AA's offer of reemployment.

60.        On or around January 25, 2016, the FAA issued Harwood an Authorization for special issuance of a first-class airman medical certificate under 14 C.F.R. § 67.401.

61.     Thereafter, on or around January 26, 2016, Hansen advised Harwood that AA could return Harwood "immediately to the line."

62.     On or around February 18, 2016, Harwood began upgrade training with AA.

63.     Harwood has finally been reemployed with AA as a pilot.

64.     However, as of the date of this filing, AA has failed to compensate Harwood for its failure to reemploy Harwood from September 1, 2015, to January 26, 2016. During this period, Harwood was without access to the benefits of employment set out in the provisions of the Joint Collective Bargaining Agreement and without income from his civilian employer.

## COUNT I
### Discrimination in Violation of the
### Uniformed Services Employment and Reemployment Rights Act of 1994,
### 38 U.S.C. § 4311

65.     Harwood hereby incorporates the allegations set forth in the foregoing paragraphs as though fully alleged herein.

66.     Harwood is an "employee" and AA is an "employer" as those terms are defined by 38 U.S.C. § 4303.

67.     Harwood is a member of the U.S. Air Force, a uniformed service as defined by 38 U.S.C. § 4303(16).

68.     Harwood's supervisors and colleagues are aware of his previous military service.

69.     A person who has performed service in a uniformed service shall not be denied any benefit of employment by an employer on the basis of that service.  38 U.S.C. § 4311.

11

70.      Benefits of employment include "any advantage, profit, privilege, gain, status, account, or interest (other than wages or salary for work performed) . . ., and includes . . . awards, bonuses, severance pay, supplemental unemployment benefits, vacations, and the opportunity to select work hours or location of employment." 38 U.S.C. § 4303(2).

71.      AA denied Harwood a benefit of his employment when AA failed to reemploy him on or around September 1, 2015, through January 26, 2016, on the basis of Harwood's performance of service with the U.S. Air Force ending on or around August 31, 2015, leaving him without access to his accrued sick leave and income.

72.      For violations of 38 U.S.C. § 4311, Harwood is entitled under 38 U.S.C. § 4323 to reparations, including, but not limited to the following:

    a.   hiring, reinstatement or upgrading of Harwood, with or without back pay;
    b.   economic damages including front and back pay;
    c.   compensatory damages;
    d.   liquidated damages;
    e.   punitive damages;
    f.   reasonable attorney fees;
    g.   expert witness fees;
    h.   litigation expenses;
    i.   court costs; and
    j.   any other relief that this Court deems just and equitable.

## COUNT II
### Failure to Reemploy in Violation of the
### Uniformed Services Employment and Reemployment Rights Act of 1994,
### 38 U.S.C. § 4312

73.      Harwood hereby incorporates the allegations set forth in the foregoing paragraphs as though fully alleged herein.

74.      Harwood is an "employee" and Defendant is an "employer" as those terms are defined at 38 U.S.C. § 4303.

75.      Harwood is a member of the U.S. Air Force, a uniformed service as defined by 38 U.S.C. § 4303(16).

76.      Harwood's supervisors and colleagues are aware of his previous military service.

77.      Any person whose absence from a position of employment is necessitated by reason of service in the uniformed services shall be entitled to the reemployment rights and benefits and other employment benefits. 38 U.S.C. § 4312(a).

78.      Harwood was entitled to the reemployment rights and benefits and other employment benefits of USERRA when he contacted AA's New York Flight Office by email on or around June 3, 2015, with his estimated return date of September 20, 2015, from a period of military service.

79.      Harwood was further entitled to the reemployment rights and benefits and other employment benefits of USERRA when he informed AA's New York Flight Office by email that his period of military service would end on August 31, 2015.

80.      Harwood was entitled to the reemployment rights and benefits and other employment benefits of USERRA because the cumulative length of the absence and of all previous absences from his position of employment with AA by reason of service in the uniformed services did not exceed five (5) years.

81.      Harwood was entitled to the reemployment rights and benefits and other employment benefits of USERRA because Harwood applied for a new bid status with AA on or around July 29, 2015, prior to his return from military service.

82.     AA denied Harwood the reemployment rights and benefits and other employment benefits of USERRA on or around August 26, 2015, when AA denied Harwood reemployment until Harwood possessed a valid First Class Medical Certificate.

83.     For violations of 38 U.S.C. § 4312, Harwood is entitled under 38 U.S.C. § 4323 to reparations, including, but not limited to the following:

  a.  hiring, reinstatement or upgrading of Harwood, with or without back pay;
  b.  economic damages including front and back pay;
  c.  compensatory damages;
  d.  liquidated damages;
  e.  punitive damages;
  f.  reasonable attorney fees;
  g.  expert witness fees;
  h.  litigation expenses;
  i.  court costs; and
  j.  any other relief that this Court deems just and equitable.

## COUNT III
### Failure to Reemploy in Violation of the
### Uniformed Services Employment and Reemployment Rights Act of 1994,
### 38 U.S.C. § 4313

84.     Harwood hereby incorporates the allegations set forth in the foregoing paragraphs as though fully alleged herein.

85.     Harwood is an "employee" and Defendant is an "employer" as those terms are defined at 38 U.S.C. § 4303.

86.     Harwood is a member of the U.S. Air Force, a uniformed service as defined by 38 U.S.C. § 4303(16).

87.     Harwood's supervisors and colleagues are aware of his previous military service.

88.      A person entitled to reemployment under 38 U.S.C. § 4312, upon completion of a period of service in the uniformed services, shall be promptly reemployed in a position of employment.  38 U.S.C. § 4313(a).

89.      A person with a disability incurred in or aggravated during military service, and who after reasonable efforts by the employer to accommodate the disability is not qualified due to such disability to be employed in the position of employment in which the person would have been employed if the continuous employment of such person with the employer had not been interrupted by such service must be placed in any other position which is equivalent in seniority, status, and pay, or in a position which is the nearest approximation in terms of seniority, status, and pay. 38 U.S.C. § 4313(a)(3).

90.      Harwood learned of a disability incurred in or aggravated during military service when in or around December 2013, Harwood was diagnosed with atrial fibrillation after a period of military service beginning in or around June 2013.

91.      AA declined to accommodate Harwood's disability when on or around August 26, 2015, AA denied Harwood reemployment until he possessed a valid First Class Medical Certificate.

92.      AA failed to place Harwood in a position equivalent in seniority, status, and pay when AA offered Harwood a position in the Flight Technical Operations Group at the AA Flight Academy in Dallas, Texas, on or around January 21, 2016.

93.      For violations of 38 U.S.C. § 4313, Harwood is entitled under 38 U.S.C. § 4323 to reparations, including, but not limited to the following:

    k.  hiring, reinstatement or upgrading of Harwood, with or without back pay;
    l.  economic damages including front and back pay;
    m.  compensatory damages;
    n.  liquidated damages;

o.   punitive damages;
p.   reasonable attorney fees;
q.   expert witness fees;
r.   litigation expenses;
s.   court costs; and
t.   any other relief that this Court deems just and equitable.

## PRAYER FOR RELIEF

WHEREFORE, Harwood prays this Honorable Court for Judgment against AA in an amount of economic damages, compensatory damages, and punitive damages to be determined at trial, plus attorneys' fees, costs of this action, and any other relief this Honorable Court deems just and proper to award.

Respectfully submitted,

Adam Augustine Carter, VA Bar No. 32722
R. Scott Oswald, VA Bar No. 41770
The Employment Law Group, P.C.
888 17th Street, NW, 9th Floor
Washington, D.C. 20006
(202) 261-2803
(202) 261-2835 (facsimile)
*Counsel for Plaintiff*

16

## JURY DEMAND

Harwood demands a trial by jury for any and all issues proper to be so tried.

Respectfully submitted,

Adam Augustine Carter, VA Bar No. 32722
R. Scott Oswald, VA Bar No. 41770
The Employment Law Group, P.C.
888 17th Street, NW, 9th Floor
Washington, D.C. 20006
(202) 261-2803
(202) 261-2835 (facsimile)
*Counsel for Plaintiff*