IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

MAJOR GENERAL              )
THOMAS P. HARWOOD III      )
                           )
        Plaintiff,          )
                           )
v.                         )   Case No. 1:17-cv-00484-GBL-JFA
                           )
                           )
AMERICAN AIRLINES INC.     )
                           )
        Defendant.          )

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on Defendant American Airlines Inc. ("AA")'s Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. No. 9.) This case concerns claims brought by Plaintiff Major General Thomas P. Harwood III pursuant to the Uniformed Services Employment and Reemployment Rights Act ("USERRA"), 38 U.S.C. § 4301, *et seq*. Plaintiff asserts claims for discrimination and failure to reemploy against AA, who, prior to Plaintiff's June 2013 to August 31, 2015 military leave of absence, employed Plaintiff as an airline pilot. (Dkt. No. 1, "Compl.") Plaintiff filed a Complaint against AA alleging violation of USERRA on the following three counts: Discrimination, in violation of 38 U.S.C. § 4311 (Count One); (2) Failure to Reemploy, in violation of 38 U.S.C. § 4312 (Count Two); and (3) Failure to Reemploy, in violation of 38 U.S.C. § 4313 (Count Three). (Compl. ¶¶ 65-93.)

There are three issues before the Court. The first issue before the Court is whether Plaintiff states a plausible claim for relief under 38 U.S.C. § 4311, where Plaintiff contends that AA discriminated against him on the basis of his fulfillment of military service with the United States Air Force, when AA did not reemploy him from September 1, 2015 through January 26,

2016. (Comp. ¶ 71.) The second issue before the Court is whether Plaintiff states a plausible claim for relief under 38 U.S.C. § 4312 where Plaintiff maintains that AA failed to reemploy him despite his compliance with § 4312 requirements for reemployment. (Compl. ¶¶ 77-82.) The third issue before the Court is whether Plaintiff states a plausible claim for relief under 38 U.S.C. § 4313 where Plaintiff claims that AA failed to promptly reemploy Plaintiff in accordance with § 4313. (Compl. ¶¶ 88-92.)

With respect to the first issue, the Court holds that Plaintiff has failed to state a plausible claim for relief under § 4311 because § 4311 protects veterans from discrimination *after* they have been reemployed following deployment, and Plaintiff has failed to plead any facts that demonstrate that Plaintiff was discriminated against subsequent to his January 26, 2016 reemployment. In regard to the second issue, the Court holds that Plaintiff states a plausible claim for relief because Plaintiff pleaded sufficient facts to support his claim that he complied with § 4312 requirements for reemployment. With respect to the third issue, the Court holds that Plaintiff stated a plausible claim for relief under § 4313, because Plaintiff pleaded sufficient facts to support his claim that AA failed to promptly reemploy him within two weeks of his request for reemployment. Accordingly, the Court GRANTS AA's Motion to Dismiss with respect to Count One, and DENIES AA's Motion to Dismiss with respect to Count Two and Count Three.

## I. BACKGROUND

### A. Factual Background

Plaintiff is a United States Air Force general who has been employed with AA since 1992. (Compl. ¶¶ 13, 17.) From 1991 to 2015, Plaintiff served in various capacities in the Air Force, including: combat deployments in Bosnia, Iraq, and Afghanistan; serving as a mobilization assistant in Air Education and Training Command, Pacific Air Force, and

Headquarters U.S. Air Force; working in the capacity of Air Component Commander in multiple Joint Chief of Staff-level exercises and two Presidential visits; experience as Chief of Staff for Air Forces Pacific during Operations Tomodachi and Pacific Passage; and serving as Chief of the United States Military Training Mission to the Kingdom of Saudi Arabia. (Compl. ¶¶ 14-15.)

Plaintiff began employment with AA on November 24, 1992. (Compl. ¶ 17.) Around October 1993, Plaintiff was furloughed by AA, but was subsequently reemployed by AA in August of 1996 and began training to become a B-727 Flight Engineer, where he flew out of Dallas/ Fort Worth International Airport in Texas. (Compl. ¶ 20.) Around the summer of 1997, Ruben Garza, an AA Dallas Flight Officer[1], told Plaintiff that AA would not allow Plaintiff to take "so much military leave," and that Plaintiff would "have to decide if [he is] going to play soldier or be an airline pilot." (Compl. ¶ 21.) Garza did not provide Plaintiff with a written policy to support his statements. (Compl. ¶ 21.)

Around the year 2000, Plaintiff was promoted to become a B-757-767 First Officer and received an Airline Transport Pilot Certificate. (Compl. ¶ 25.) From 2000 to 2011 Plaintiff flew domestic and international flights for AA from Los Angeles International Airport, and also completed assignments for the United States Air Force. (Compl. ¶¶ 26-27.) Around 2011, Plaintiff was transferred by AA from Los Angeles International Airport to John F. Kennedy International Airport in New York, where Plaintiff continued to fly international and domestic flights. (Compl. ¶ C.)[2]

Around June of 2013, Plaintiff commenced a period of military leave of absence from AA to serve as Chief of the United States Military Training Mission in Riyadh, Saudi Arabia. (Compl. ¶¶ 28-29.) In December 2013, Plaintiff was diagnosed with atrial fibrillation. (Compl.

---

[1] Plaintiff's Complaint names Ruben Garza as an "AA Dallas Flight Office." (Dkt. No 1 at 4 ¶21.) The Court infers that Plaintiff intended to describe Garza as an American Airlines Dallas Flight *Officer*.

[22] Paragraph C is on page 5 of the Plaintiff's complaint.

¶ 30.) Subsequently, in December 2013 and August 2014, Plaintiff underwent two procedures to rectify the condition, but both procedures were unsuccessful. (Compl. ¶ 30.)

Around June 3, 2015, Plaintiff emailed AA's New York Flight Office to ask for a new bid status as a 737 domestic captain in New York, and also to notify the office that he expected to return to New York on September 20, 2015. (Compl. ¶ 31.) However, on about July 13, 2015, Plaintiff received Separation Orders from the United States Air Force with an effective date of August 31, 2015. (Compl. ¶ 32.) Ten days later, on July 23, 2015, Plaintiff emailed AA to notify AA that Plaintiff's then period of service with the Air Force would be terminated on August 31, 2015. (Compl. ¶ 33.) Two days later, on July 25, 2015, Plaintiff emailed a copy of his Separation Orders to AA's New York Flight Office. (Compl. ¶ 34.)

On about July 28, 2015, Ken Blessum, an American Airlines Senior Analyst of Crew Planning and Analysis, emailed Plaintiff instructing Plaintiff to contact Sue Kalosa, AA's Manager of Flight Administration. (Compl. ¶ 35.) As such, Plaintiff emailed Kalosa on about July 29, 2015, to again request his bid status as a 737 domestic captain in New York. (Compl. ¶ 36.) Kalosa responded on about August 3, 2015 confirming Plaintiff's return to LaGuardia Airport[3] in New York as a 737 captain for domestic flights. (Compl. ¶ 37.) Kalosa also told Plaintiff that the Training Department would notify Plaintiff of a start date for training, and that Plaintiff would need a First Class Medical Certificate to begin his role as domestic captain even though Plaintiff had only needed a Second Class Medical Certificate in his prior position. (Compl. ¶ 37.)

---

[3] Plaintiff's Complaint indicates that prior to his period of service in Saudi Arabia, which began in June of 2013, Plaintiff was employed by AA as a domestic Captain at *John F. Kennedy International Airport* in New York. (Compl. ¶¶ 28, C.) Though Plaintiff maintains that he requested to "*return to Laguardia* [sic.] *Airport*," (Compl. ¶ 37) (emphasis added) after his period of service in Saudi Arabia, LaGuardia Airport is an entirely different airport than John F. Kennedy International Airport, of which Plaintiff pleaded to have originally worked.

4

On August 5, 2015, the United States Air Force asked Plaintiff to attend a Joint Flag Officer Warfighting Course from September 13, 2015 to September 18, 2015 so that Plaintiff could qualify as a Joint Force Commander. (Compl. ¶ 39.) On August 7, 2015, Plaintiff notified AA of the required course, and asked AA's New York Flight Office to modify Plaintiff's schedule to allow him to attend the class. (Compl. ¶ 40.) Around August 10, 2015, Plaintiff and Lorrain Sutera of AA's New York Flight Administration discussed Plaintiff's reemployment with AA and Plaintiff's upcoming military leave of absence from September 15 – 18, 2015. (Compl. ¶ 7.) Sutera informed Plaintiff that AA would "bring [Plaintiff] back on payroll September 1st." *Id.* Around August 20, 2015, Plaintiff was assigned a training schedule by AA that did not include a period of military leave of absence from September 13 – 18, 2015. (Compl. ¶ 42.)

Also, on August 20, 2015, Plaintiff emailed Sue Kalosa to notify her that he was unable to secure the required First Class Medical Certificate for the domestic captain position at LaGuardia Airport. (Compl. ¶ 43.) Around late August of 2015, the Aviation Medical Examiner's Office informed Plaintiff that he would need a waiver from the Federal Aviation Administration ("FAA") in order to be able fly. (Compl. ¶¶ 44-45.)

On August 26, 2015, Jerry Shaw of the AA's New York Flight Administration, informed Plaintiff that AA could not reemploy Plaintiff without a First Class Medical Certificate. (Compl. ¶ 46.) In response, Plaintiff reminded Shaw of Plaintiff's rights under the USSERA, and asked Shaw for help with his medical condition after he was reemployed with AA. *Id.* On August 27, 2015, Kalosa contacted Plaintiff again to tell Plaintiff that AA required pilot service members to have a valid First Class Medical Certificate. (Compl. ¶ 47.) On August 27, 2015, Kalosa also

told Plaintiff that AA would keep Plaintiff on military leave of absence until Plaintiff received a waiver of the First Class Medical Certificate from the FAA. *Id.*

Around September 1, 2015, Plaintiff contacted Scott Hansen, AA's Director of Flight Administration to ask Hansen whether Plaintiff was eligible for reemployment with AA. (Compl. ¶ 49.) Hansen responded by informing Plaintiff that Plaintiff would be "returned to active employment based upon [Plaintiff's] notification to the company and presuming [Plaintiff met] USERRA guidelines and the company policy for re-employment [sic.]. So long as [Plaintiff had] a current and valid medical, and [was] able for training, [Plaintiff was] good to go." (Compl. ¶ 49.) When Plaintiff told Hansen that Plaintiff believed AA's policy of requiring pilots to have a First Class Medical Certificate was a violation of 38 U.S.C. § 4312, Hansen confirmed that AA would extend Plaintiff's military leave of absence until Plaintiff received a FAA waiver. (Compl. ¶ 51.)

On October 22, 2015, Conrad S. Kee, a principal with Jackson Lewis P.C., which is counsel for AA, emailed Plaintiff's counsel to confirm with him a prior conversation Kee had with Plaintiff's counsel regarding Plaintiff. (Dkt. 9-1.) Kee reaffirmed that Plaintiff was unqualified to return to his pilot position "because he [was] unable to qualify for a First Class Medical certificate [sic.]." (Dkt. No. 9-1.) Kee's email to Plaintiff's counsel went on to say the following:

> [AA] is willing to accommodate [Plaintiff's] medical condition by extending his military leave to permit him time to seek a waiver from the FAA so that he can qualify for a First Class Medical certificate [sic.]. [AA] will also offer reasonable assistance to [Plaintiff] in his waiver process, although the ultimate determination is up to the FAA, rather than [AA]. Alternatively, if [Plaintiff] does not wish to extend his military leave, [AA] will reemploy him in the Flight Technical Operations Group at the Flight Academy in DFW, in a position appropriate for his status. In that position, [Plaintiff] will be compensated at the same rate he would receive if actively flying. If [Plaintiff] elects employment in the Flight Technical Operations Group, he can continue to seek a waiver from the FAA on his First

Class Medical. To be clear, the option whether to remain on military leave pending an [sic] FAA decision on his First Class Medical certificate or to be reemployed in the Flight Technical Operations Group at the Flight Academy is [Plaintiff's] choice and [AA] will fully support whatever decision he makes.

(Dkt. No. 9-1.)

Subsequently, on November 9, 2015, Plaintiff notified AA that he planned to commence active duty orders with the Air Force on November 16, 2015, and on November 16, 2015, Plaintiff began those active duty orders. (Compl. ¶ 54.) Additionally, Plaintiff continued to take actions toward obtaining a waiver of his First Class Medical Certificate from the FAA. (Compl. ¶¶ 55-56.) Specifically, around early November 2015, Plaintiff took a nuclear stress test, and on December 21, 2015 Plaintiff took an echocardiogram test in an effort to obtain the waiver. *Id.*

On December 21, 2015, Plaintiff also notified AA that he would again request reemployment on January 8, 2016 when he completed this term of service with the Air Force. (Compl. ¶ 57.) On January 21, 2016, AA extended Plaintiff another offer to work at the Flight Technical Operations Group at the AA's Flight Academy in Dallas, Texas, which is the same position they offered on October 22, 2015. (Compl. ¶ 59; Dkt. No. 9-1.) Plaintiff accepted AA's offer of reemployment at the Flight Academy in Dallas. (Compl. ¶ 59.)

On January 25, 2016, Plaintiff was issued an Authorization for Special Issuance of a Medical Certificate pursuant to 14 C.F.R. § 67.401. (Compl. ¶ 60.) The next day, on January 26, 2016, Plaintiff was notified by AA that he could "return to the line."[4] Plaintiff accepted AA's offer and on February 18, 2016, Plaintiff began upgrade training with AA. (Compl. ¶¶ 62-63.)

---

[4] It is the Court's understanding the phrase "return to the line" denotes that Plaintiff could be reemployed with AA as a 737 domestic captain at LaGuardia Airport in New York.

7

## B. Procedural Background

On April 24, 2017, Plaintiff filed a complaint against AA alleging the following violations of USERRA: (1) Discrimination, in violation of 38 U.S.C. § 4311 (Count One); (2) Failure to Reemploy, in violation of 38 U.S.C. § 4312 (Count Two); and (3) Failure to Reemploy, in violation of 38 U.S.C. § 4313 (Count Three). (Compl. ¶¶ 65-93.) Subsequently, on June 27, 2017, AA filed this Motion to Dismiss on all three counts arguing that Plaintiff did not adequately state a claim for relief pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. No. 9 at 1 and 2.) This matter has been fully briefed, and is now ripe for disposition.

## II. DISCUSSION

### A. Standard of Review

#### i. Fed. R. Civ. P. 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) enables a defendant to move for dismissal by challenging the sufficiency of the plaintiff's complaint. Fed. R. Civ. P. 12(b)(6). A 12(b)(6) motion should be granted where the plaintiff has failed to "state a plausible claim for relief" under Rule 8(a). *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (internal quotation marks omitted) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). To survive a Rule 12(b)(6) motion, a claim must be facially plausible, meaning the complaint contains sufficient factual allegations, which if taken as true, "raise a right to relief above the speculative level" and "nudg[e] [the] claims across the line from conceivable to plausible," allowing "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Vitol, S.A. v. Primerose Shipping Co.*, 708 F.3d 527, 543 (4th Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)); *Iqbal*, 556 U.S. at 678. The requirement for plausibility does not mandate a showing of probability but merely that there is more than a possibility of the

defendant's unlawful acts. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678). As a result, a complaint must contain more than "naked assertions" and "unadorned conclusory allegations" and requires some "factual enhancement" in order to be sufficient. *Id.* (citing *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 557).

Thus, in reviewing a 12(b)(6) motion to dismiss, a court must separate factual allegations from legal conclusions. *Burnette v. Fahey*, 698 F.3d 171, 180 (4th Cir. 2012). Further, a court may "consider documents incorporated into the complaint by reference, as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic." *United States ex rel. Oberg v. Pa. Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014) (citations and internal quotation marks omitted).

*ii. USERRA*

USERRA "was enacted to protect the rights of veterans and members of the uniformed services," and thus the statute should be construed liberally "in favor of its military beneficiaries." *Francis v. Booz, Allen & Hamilton, Inc.*, 452 F.3d 299, 303 (4th Cir. 2006). Sections 4311, 4312, 4313, and 4316 provide the framework for USERRA. *Butts v. Prince William Cty. Sch. Bd.*, 844 F.3d 424, 430 (4th Cir. 2016).

Section 4311 precludes employers from discriminating against employees who are service members. Section 4311 is applicable to veterans subsequent to their "reemployment following deployment." *Butts*, 844 F.3d at 430; *Francis*, 452 F.3d at 304. Sections 4312 and 4313 apply to veterans who seek ~~are looking~~ to be reemployed. *Butts*, 844 F.3d at 430. Under 38 U.S.C. § 4312, "any person whose absence from a position of employment is necessitated by reason of service in the uniformed services shall be entitled to the reemployment rights and benefits and other employment benefits of [USERRA] if," the following three requirements are

9

fulfilled: "(1) the employee gives notice to his employer when leaving; (2) the absence is for less than five years as defined by the USERRA; and (3) the employee timely applies for reemployment upon his return." *Sulton v. City of Chesapeake*, 713 F. Supp. 2d 547, 551 (E.D. Va. 2010); 38 U.S.C. § 4312(a).

Should the employee satisfy these conditions of eligibility, the employer's actions must comport with § 4313(a)(1)-(4), which set forth the position the service member is entitled to after completion of their period of service. 38 U.S.C. § 4313(a)(1)-(4); *see also Butts*, 844 F.3d at 430.

## B. Analysis

The Court GRANTS AA's Motion to Dismiss Count One, and DENIES AA's Motion to Dismiss with respect to Counts Two and Three. The Court GRANTS AA's Motion to Dismiss Count One alleging that AA discriminated against Plaintiff in violation of 38 U.S.C. § 4311 because § 4311 protects veterans from discrimination *after* they have been reemployed following deployment, and Plaintiff has failed to plead any facts that demonstrate that Plaintiff was discriminated against subsequent to his January 26, 2016 reemployment. The Court DENIES AA's Motion to Dismiss Counts Two and Three of Plaintiff's complaint because Plaintiff adequately stated plausible claims for relief. Plaintiff pleaded that AA violated 38 U.S.C. §§ 4312 and 4313 when despite Plaintiff's compliance with the reemployment requirements of 38 U.S.C. § 4312, AA failed to promptly reemploy Plaintiff in an appropriate position in accordance with § 4313, following Plaintiff's period of active duty with the United States Air Force ending on August 31, 2015.

*1. Count One*

The Court GRANTS AA's Motion to Dismiss Count One alleging that AA discriminated against Plaintiff in violation of 38 U.S.C. § 4311 because § 4311 protects veterans from discrimination *after* they have been reemployed following deployment, and Plaintiff has failed to plead any facts that demonstrate that Plaintiff was discriminated against subsequent to his January 26, 2016 reemployment. Plaintiff's first count specifically alleges that AA violated 38 U.S.C. § 4311 when it "denied [Plaintiff] a benefit of his own employment when [AA] *failed to reemploy* [Plaintiff] on or around September 1, 2015, through January 26, 2016, on the basis of [Plaintiff's] performance of service with the United States Air Force ending on or around August 31, 2015 . . . ." (Compl. ¶ 71.) The Court holds that Plaintiff's reliance on § 4311 is misplaced.

Although 38 U.S.C. § 4311 protects veterans against discrimination, the Fourth Circuit has held that § 4311 protects veterans against discrimination only *after* the veteran has been reemployed following the veteran's completion of a term of military service. *See Butts*, 844 F.3d at 430 ("[s]ection 4311 applies after a veteran is reemployed following deployment."); *Francis*, 452 F.3d at 304 ("§ 4311 operates to prevent employers from treating those employees differently *after* they are rehired.") (emphasis added). Plaintiff does not contend that Plaintiff was further discriminated against again after he was reemployed by AA on January 26, 2016. (Dkt. No. 1.) Because Plaintiff has not alleged that he was discriminated against by AA after being reemployed by AA after January 26, 2016, Plaintiff has failed to state a plausible claim for relief under Federal Rule of Civil Procedure 8(a) with respect to Count One. Accordingly, the Court GRANTS AA's motion to dismiss Count One because Plaintiff has not pleaded any facts to demonstrate he was discriminated against subsequent to reemployment with AA.

11

*2. Counts Two and Three*

The Court DENIES AA's Motion to Dismiss Counts Two and Three of Plaintiff's complaint because Plaintiff adequately stated plausible claims for relief. Plaintiff pleaded that AA violated 38 U.S.C. §§ 4312 and 4313 when despite Plaintiff's compliance with the reemployment requirements of 38 U.S.C. § 4312, AA failed to promptly reemploy Plaintiff in an appropriate position in accordance with § 4313, following Plaintiff's period of active duty with the United States Air Force ending on August 31, 2015.

*a. Count Two*

The Court DENIES AA's Motion to Dismiss because Plaintiff has adequately pleaded facts to support him claim that he complied with the requirements for reemployment outlined in § 4312. Count Two of Plaintiff's complaint specifically alleges that AA violated 38 U.S.C. § 4312 when "[AA] denied [Plaintiff] the reemployment rights and benefits and other employment benefits of USERRA on or around August 26, 2015, when [AA] denied [Plaintiff] reemployment until [Plaintiff] possessed a valid First Class Medical Certificate." (Compl. ¶ 82.) Section 4312 provides that:

> any person whose absence from a position of employment is necessitated by reason of service in the uniformed services shall be entitled to the reemployment rights and benefits and other employment benefits of this chapter if (1) the person . . . has given advance written or verbal notice of such service to such person's employer; (2) the cumulative length of the absence and of all previous absences from a position of employment with that employer by reason of service does not exceed five years; and (3) . . . the person reports to or submits an application for reemployment to such employer in accordance with subsection (e).

38 U.S.C. § 4312(a)(1)-(3). The parties do not dispute that Plaintiff pleaded sufficient facts, which if taken as true, meet each of the three requirements of § 4312. (Dkt. No. 14 at 9 and Dkt. No. 15.) For the following three reasons, the Court holds that Plaintiff's complaint supports that conclusion.

First, the Court holds that Plaintiff has pleaded sufficient facts to satisfy the first requirement of § 4312, because it can be inferred from Plaintiff's complaint that Plaintiff gave AA advance notice of his July 2013 to August 31, 2015 period of military service. The first requirement of §4312 is that a person give their employer advance notice of their upcoming period of service. 38 U.S.C. § 3412(a)(1). The period of service at issue in this case is Plaintiff's June 2013 to August 31, 2015 period of active duty with the United States Air Force in Saudi Arabia. (Compl. ¶¶ 77-78.) Plaintiff has pleaded that AA placed Plaintiff on military leave of absence when Plaintiff began his term of active duty with the United States Air Force in June of 2013 in Saudi Arabia. (Compl. ¶¶ 28-29.) Had AA not known about Plaintiff's June 2013 – August 31, 2015 period of service in advance, it would not have been able to place Plaintiff on military leave of absence. (Compl. ¶¶ 28-29.) Thus a reasonable inference could be drawn that such placement on military leave of absence was provided when Plaintiff gave AA advance notice of this period of military absence. Taking this allegation as true, the Court finds that Plaintiff pleaded sufficient facts to support his claim that he met the first § 4312 requirement for reemployment.

Second, the Court finds that Plaintiff has also pleaded sufficient facts to support Plaintiff's claim that he has met the second condition of § 4312. The second reemployment requirement of § 4312 is that the cumulative length of absence for military service be no more than five years. As previously mentioned, Plaintiff maintains that his term of service commenced in June of 2013, and ended on August 31, 2015, totaling two years and two months. (Compl. ¶¶ 28, 32.) Because this period of time was less than five years, the Court holds that Plaintiff has adequately pleaded facts to support his argument that he has met the second requirement of § 4312.

Third, the Court holds that Plaintiff has pleaded adequate facts to satisfy the third condition of § 4312. Section 4312 requires that a veteran must submit an application for reemployment in accordance with subsection (e) of § 4312. 38 U.S.C. § 4312(a)(3). Section 4312(e) provides that "[i]n the case of a person whose period of service in the uniformed services was for more than 180 days," such person must submit "an application for reemployment with the employer not later than 90 days after the competition of the period of service . . . ." 38 U.S.C. § 4312(e)(1)(D). Section 4312(e)(1)(D) is applicable to this case because the Plaintiff's period of service began in June of 2013, and ended on August 31, 2015, and thus was a period of 26 months, which is more than 180 days. Therefore, Plaintiff had ninety days after his period of active duty ended on August 31, 2015, to submit an application for reemployment to AA.

Plaintiff applied for reemployment with AA on June 3, 2015 when he emailed AA's New York Flight Office to "request a new bid status," and then emailed AA's same office again on July 23, 2015 to inform them that Plaintiff's service with the United States Air Force would be finished on August 31, 2015. (Compl. ¶¶ 31, 33.) Both of these dates fulfill the conditions of § 4312(e)(1)(D) because they were both within the ninety-day time frame that Plaintiff had to apply for reemployment following his period of active duty ending on August 31, 2015. Because the Court finds that Plaintiff pleaded sufficient facts to state a valid claim for relief under § 4312(a)(3), the Court holds that Plaintiff has satisfactorily pleaded facts to meet the third requirement of § 4312.

Because the Court finds that Plaintiff pleaded sufficient facts to state a valid claim for relief under § 4312, the Court DENIES AA's Motion to Dismiss Count Two.

### b. Count Three

The Court DENIES AA's Motion to Dismiss Count Three because Plaintiff has pleaded sufficient facts to state a plausible claim that AA failed to promptly reemploy Plaintiff within two weeks of his request for reemployment in accordance with § 4313. Plaintiff avers that AA failed to promptly reemploy Plaintiff in accordance with § 4313 although Plaintiff fulfilled each of the reemployment obligations of § 4312. (Compl. ¶¶ 84 - 93.) The Court holds that based on the facts pleaded in Plaintiff's complaint, which at this juncture must be taken as true, Plaintiff sufficiently stated a plausible claim that AA failed to promptly reemploy Plaintiff. Therefore, AA's Motion to Dismiss Count Three is DENIED.

38 U.S.C. § 4313 provides that if a person meets each of the three conditions for reemployment outlined in Section 4312(a)(1)-(3) then, the employer must "promptly reemploy [the employee] in a position of employment" in conformity with the provisions provided in § 4313. 38 U.S.C. § 4313(a). Section 4313 generally requires that if a person's period of military service was longer than ninety days, then such persons should be reemployed "in the position of employment in which the person would have been employed if the continuous employment of such person with the employer had not been interrupted by such service, or a position of like seniority, status and pay, the duties of which the person is qualified to perform . . . ." 38 U.S.C. § 4313(2)(A). However, 38 U.S.C. § 4313(3) addresses how employers should reemploy employees who became disabled in or aggravated a disability during their period of military service, and, as a result, are no longer qualified to perform the duties of the position they had prior to deployment. 38 U.S.C. § 4313(3). Specifically, Section 4313(3) provides that such service members should be reemployed either

> (a) in any position which is equivalent in seniority, status, and pay, the duties of which the person is qualified to perform or would become qualified to perform

with reasonable efforts by the employer; or (b) if not employed under subparagraph (a) in a position which is the nearest approximation to a position referred to in subparagraph (a) in terms of seniority, status, and pay consistent with circumstances of such person's case.

38 U.S.C. § 4313(3)(A)-(B). Such reemployment must occur promptly, which under 20 C.F.R. § 1002.181 means "within two weeks of the employee's application for reemployment," unless there is an "unusual circumstance." 20 C.F.R. § 1002.181.

For the reasons stated in the previous Section of this order (see *supra*, p.12-15), Plaintiff alleges sufficient facts to support his claim that he meets each of the three conditions for reemployment provided in § 4312, thus the relevant inquiry is whether Plaintiff stated a plausible claim that AA failed to comply with § 4313. Prior to Plaintiff's period of service beginning in June of 2013 and ending on August 31, 2015, Plaintiff was employed by AA as a pilot flying domestic and international flights out of John F. Kennedy Airport in New York. (Compl. ¶ C.) This period of service lasted a total of two years and two months. (Compl. ¶¶ 28, 32.) Then, Plaintiff left AA's company in June 2013 for this period of two years and two months to complete the aforementioned period of military service. (Compl. ¶ 28.) Therefore, because this period of active duty was for more than ninety days, *if Plaintiff had been qualified for* the pilot position that he previously held, under § 4313(a)(2), Plaintiff should have been reemployed by AA as a pilot flying domestic and international flights from John F. Kennedy Airport after he returned from service on August 31, 2015.

However, Plaintiff was *not* qualified for the pilot position because he did not have a FAA required First Class Medical Certificate. (Compl. ¶ 37). Plaintiff further avers that he was diagnosed with atrial fibrillation in December of 2013 while he was fulfilling his period of service with the United States Air Force in Saudi Arabia. (Compl. ¶ 30.) Plaintiff pleaded that although Plaintiff underwent two procedures to correct the condition, both procedures were

unsuccessful. (Compl. ¶ 30.) Taking these facts as true, Plaintiff was unqualified for the pilot position because he did not possess a First Class Medical Certificate, and because he incurred atrial fibrillation during his period of service.

Therefore, in order to have a stated a plausible claim for relief under § 4313, Plaintiff must have pleaded that AA did not make a reasonable effort to accommodate Plaintiff's disability and employ Plaintiff in a position equivalent in "seniority, status, and pay," to Plaintiff's prior pilot position, or "in a position a position [that] is the nearest approximation to [the pilot position] in terms of seniority, status, and pay consistent with circumstances of [Plaintiff's] case," 38 U.S.C. § 4313(a)(3). Moreover, under to 38 U.S.C. § 4313(a) and 20 C.F.R. § 1002.181, Plaintiff must plead sufficient facts to show that AA did not make reasonable efforts to accommodate Plaintiff's disability and reemploy Plaintiff in a position equivalent in seniority, status, and pay promptly within two weeks of Plaintiff's application for reemployment. 38 U.S.C. § 4313(a); 20 C.F.R. § 1002.181.

AA first argues that its Motion to Dismiss should be granted because AA acted appropriately when it extended Plaintiff's military leave of absence in September of 2015, in that 20 C.F.R. § 1002.116 allows a person who cannot "perform the duties of his prior position" due to an illness or injury incurred during a period of active service . . ." the option of reporting to or submitting an application for reemployment once they have recovered from such illness. (Dkt. No. 9 at 9.) However, as AA maintains (*Id.*), this decision is to be made at the discretion of the individual who is injured or ill. 20 C.F.R. § 1002.116. Thus, in this case, the decision to remain on military leave of absence was to be made at the discretion of the Plaintiff – not AA. Plaintiff has pleaded, that on August 27, 2015, AA "require[ed]" Plaintiff be placed military leave of absence until Plaintiff could obtain a First Class Medical Certificate or a waiver of such

17

certificate from the FAA. (Compl.¶ 47.) Instead of requiring Plaintiff remain on military leave of absence, AA should have taken reasonable efforts to accommodate Plaintiff's disability by reemploying Plaintiff in a position equivalent to the pilot position he previously had promptly after Plaintiff applied for reemployment. Taking, these facts as true, the Court holds that Plaintiff stated a plausible claim against AA for violating § 4313, when AA "required" Plaintiff to extend Plaintiff's period of military leave of absence instead of offering Plaintiff another position of equal seniority, status, and pay.

AA further maintains that AA acted in compliance with 38 U.S.C. § 4313 when on October 22, 2015, AA offered Plaintiff the option to either "extend [Plaintiff's] military leave to permit him time to seek a waiver from the FAA so that [Plaintiff could] qualify for a First Class Medical Certificate," or be reemployed by AA "in the Flight Technical Operations Group at the Flight Academy in DFW." (Dkt. No. 9 at 4 and Dkt. No. 9-1.) AA further asserts that because this offer indicated that the position at the Flight Academy at DFW would be "compensated at the same rate [Plaintiff] would [have] receive[d] if actively flying," such officer is of the same seniority, status, and pay that Plaintiff would have received if reemployed as a pilot at John F. Kennedy Airport. (Dkt. No. 9 at 4 and Dkt. No. 9-1.) Although AA may have, *eventually* extended this offer to Plaintiff, which may have been a reasonable accommodation that would have compensated Plaintiff at the same rate of pay that Plaintiff would have received had he been reemployed as a pilot at John F. Kennedy Airport, the Court holds that this offer was not extended promptly in accordance with 38 U.S.C. § 4313(a) and 20 C.F.R. § 1002.181.

As previously mentioned, Plaintiff applied for reemployment with AA on June 3, 2015 when Plaintiff emailed AA's New York Flight Office to "request a new bid status," and then emailed the same office again on July 23, 2015 to inform them that his service with the United

18

States Air Force would be finished on August 31, 2015. (Compl. ¶¶ 31, 33.) Therefore, under 38 U.S.C. § 4313(a) and 20 C.F.R. § 1002.181, AA had two weeks from July 23, 2015, at the latest, to accommodate Plaintiff or provide Plaintiff with another position that was of the same seniority, status, and pay as Plaintiff's previous pilot position. However, Plaintiff has pleaded that AA "require[ed]" Plaintiff to remain on military leave of absence, and failed to offer Plaintiff any alternate position until October 22, 2015, when AA emailed Plaintiff to provide Plaintiff an opportunity to take a position in the Flight Technical Operations Group at the Flight Academy in DFW. (Compl. at ¶ 52.) AA does not dispute that AA's offer was not extended until October 22, 2015. (Dkt. No. 9-1.) Accordingly, taking this fact as true, the Court holds that Plaintiff has stated a plausible claim against AA for violating 38 U.S.C. § 4313, because AA failed to promptly reemploy Plaintiff within two weeks of his request for reemployment, in a position of equivalent seniority, status, and pay to Plaintiff's prior pilot position. Accordingly, the Court DENIES AA's Motion to Dismiss Court Three.

### III. CONCLUSION

The Court GRANTS AA's Motion to Dismiss Count One, and DENIES AA's Motion to Dismiss with respect to Counts Two and Three. The Court GRANTS AA's Motion to Dismiss Count One alleging that AA discriminated against Plaintiff in violation of 38 U.S.C. § 4311 because § 4311 protects veterans from discrimination *after* they have been reemployed following deployment, and Plaintiff has failed to plead any facts that demonstrate that Plaintiff was discriminated against subsequent to his January 26, 2016 reemployment. The Court DENIES AA's Motion to Dismiss Counts Two and Three of Plaintiff's complaint because Plaintiff adequately stated plausible claims for relief. Plaintiff pleaded that AA violated 38 U.S.C. §§ 4312 and 4313 when despite Plaintiff's compliance with the reemployment requirements of 38

U.S.C. § 4312, AA failed to promptly reemploy Plaintiff in an appropriate position in accordance with § 4313, following Plaintiff's period of active duty with the United States Air Force ending on August 31, 2015.

Accordingly, **IT IS HEREBY ORDERED** that AA's Motion to Dismiss (Dkt. No. 9) is **GRANTED** in part with respect to Count One of Plaintiff's Complaint (Compl. ¶¶ 65-72) and **DENIED** with regard to Count Two (Compl. ¶¶ 73-83) and Count Three of Plaintiff's Complaint (Compl. ¶¶ 84-93).

**IT IS SO ORDERED.**

**ENTERED** this 9th day of August, 2017.

/s/
Gerald Bruce Lee
United States District Judge