# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
# Alexandria Division

| | |
|---|---|
| MAJOR GENERAL THOMAS P. HARWOOD III, <br><br> *Plaintiff,* <br><br> v. <br><br> AMERICAN AIRLINES, INC., <br><br> *Defendant.* | Case No. 1:17-cv-0484 <br> Hon. Liam O'Grady |

## MEMORANDUM OPINION

This matter comes before the Court on cross-motions for summary judgment. Dkt. Nos. 41 and 44. The motions are fully briefed and the Court heard oral argument on April 13, 2018. For the following reasons, the reasons stated from the bench, and for good cause shown, summary judgment is **GRANTED in part** for the Plaintiff as to Counts II and III of the Amended Complaint and **DENIED** as to Defendant's affirmative defense against liquidated damages that it acted reasonably and in good faith and that its actions were not willful. Defendant's motion for summary judgment is **DENIED in part** on Counts II and III of the Amended Complaint and **GRANTED in part** on the question of liquidated damages.

## I. Background

The facts of this case are undisputed. Plaintiff Thomas P. Harwood III alleges that Defendant American Airlines (American) violated the Uniformed Services Employment and Reemployment Act (USERRA) when it refused to reinstate him as a pilot following active duty military service where American determined that Plaintiff was ineligible to fly because he lacked medical clearance required by the Federal Aviation Administration. Harwood is a Major General

1

in the United States Air Force Reserve. From June 2013 to August 31, 2015, General Harwood took military leave from his pilot duties at American to serve in an active duty status with the Air Force. During this tour of duty, on or about December 1, 2013, General Harwood was diagnosed with atrial fibrillation.

On June 3, 2015, General Harwood contacted Jerry Shaw with American to advise American that General Harwood intended to return to American at the conclusion of his active duty tour. He requested to be assigned duties as an airline captain based out of LaGuardia Airport and assigned domestic routes flying Boeing 737 aircraft. At the time, General Harwood lived in Alexandria, Virginia. Mr. Shaw contacted Ken Blessum with American to determine if that assignment would be available to General Harwood and Blessum determined that it would be. On July 29, 2015, with General Harwood's reemployment date approaching, Mr. Shaw advised General Harwood to contact Sue Kalosa with American to handle the logistics of his reemployment. There is no evidence at this time that American had any intent but to promptly reemploy General Harwood in the pilot position he requested.

As American was making arrangements for General Harwood's reemployment as a pilot pursuant to his request, General Harwood, around late July or early August 2015 had discovered that he was unable to obtain a first class medical certificate because of his atrial fibrillation. A first class medical certificate is required by the Federal Aviation Administration (FAA) for all pilots. General Harwood first notified American of the situation on August 20, 2015. Subsequent to that notification, Mr. Shaw e-mailed General Harwood to ask for a time frame for obtaining the certificate and to "let [Shaw] know as soon as possible if the medical is going to take some time so [American] can avoid setting up training that [Harwood] will not be able to attend."

During a subsequent phone call with Mr. Shaw on August 26, 2015, General Harwood

2

made Mr. Shaw aware that General Harwood still wanted to be reemployed as a pilot, despite the FAA regulations, but that he wanted to use his sick leave balance of 854 hours until he could try to obtain his certificate. American took the position that it could not return General Harwood to work as a pilot because he was not eligible to fly.

On August 27, 2015, American conveyed to General Harwood that he could not be reemployed as a pilot without a first class medical certificate. On September 1, 2015, General Harwood e-mailed Scott Hansen, American's agent in charge of decisions regarding pilots returning from military leave, to clarify that he was, in fact, reemployed on September 1, 2015. Mr. Hansen replied that day that General Harwood was cleared to start that day as a pilot if he had a valid first class medical certificate. General Harwood replied that he had not obtained the certificate but argued that he met all the conditions of 38 U.S.C. § 4312 and that the first class medical certificate is not a condition precedent to his reemployment. Mr. Hansen responded on September 4, 2015 that General Harwood would not be reemployed as a pilot but that American would reemploy him consistent with 38 U.S.C. § 4313 by reemploying him in an equivalent position.

General Harwood responded on October 1, 2015, through counsel, requesting that he be reemployed. He requested reemployment as a pilot or in the alternative be employed in Operations Safety and Compliance within the Flight Department, or be employed in Flight Operations within the Flight Department, both located in Dallas, Texas. On October 22, 2015, American offered Harwood a custom-made position with American's Flight Technical Operations Group within the Flight Department in Texas.

General Harwood accepted that position on January 25, 2016. Also on January 25, 2016, Harwood obtained a waiver from the FAA for special issuance of a first class medical certificate,

he notified American that he had finally obtained that certificate, and he was promptly reassigned the next day as a 737 pilot as he had requested in the summer of 2015.

In the months between September 1, 2015 and his official reemployment in 2016, General Harwood spent from September 14 to 18, September 21 to 26, October 13 to 30, November 2 to 6, November 17 to January 7 and January 19 to 22 on active duty status with the Air Force. General Harwood continues to be employed by American as a pilot and has taken and returned from military leave since 2015 without incident.

The parties have cross-moved for summary judgment on both remaining counts of the complaint. General Harwood has also moved for summary judgment on American's affirmative defense that it acted reasonably and in good faith and that its actions were not willful.

## II. Legal Standard

Summary judgment will be granted where, viewing the facts in a light most favorable to the non-moving party, there remains no genuine issue of material fact. FED. R. CIV. P. 56(c); *Marlow v. Chesterfield Cty. Sch. Bd.*, 749 F. Supp. 2d 417, 426 (E.D. Va. 2010). A party opposing a motion for summary judgment must respond with specific facts, supported by proper documentary evidence, showing that a genuine dispute of material fact exists and that summary judgment should not be granted in favor of the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Conclusory assertions of state of mind or motivation are insufficient. *Goldberg v. B. Green & Co.*, 836 F.2d 845, 848 (4th Cir. 1988). As the Supreme Court has held, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 519 (4th Cir. 2003) (quoting *Anderson v. Liberty Lobby, Inc.*, 447 U.S. 242, 247-248 (1986)) (emphasis in original).

## III. Discussion

*Section 4312*

In support of his motion for summary judgment on Count II of the amended complaint, alleging a violation of 38 U.S.C. § 4312, General Harwood contends that, as a matter of law, American was required to conduct an analysis solely under § 4312 to determine his eligibility for reemployment under USERRA. 38 U.S.C. § 4312 mandates that an employee returning from military service will be reemployed if 1) the employee or an appropriate military officer gave the employer advance notice of the service (with exceptions); 2) the cumulative length of non-exempt periods of military service during the employee's employment relationship with the employer does not exceed five years; 3) after completing the service, the employee timely returned to the employer or applied for reemployment; and 4) the employee was separated from the service without one of the eight disqualifying discharges. General Harwood contends that by adding the requirement that he be qualified for the position he sought to be reemployed into before American reemployed him, American violated the plain terms of 38 U.S.C. § 4312.

American concedes that General Harwood met all the requirements of § 4312 prior to September 1, 2015. Dkt. 47, p. 4. Nevertheless, American asserts that it took reasonable steps to reemploy General Harwood pursuant to § 4312. When American discovered, prior to reemployment, that General Harwood was not eligible to be a pilot because of his inability to obtain a first class medical certificate, American then took steps pursuant to § 4313 to find an equivalent position, asserting "[a]n employer that knows an individual cannot perform the duties of the "escalator" position, in this case a pilot, is not required to ignore that knowledge when processing reemployment." *Id.* at p. 5. American contends that, upon learning of General Harwood's condition, § 4312 and § 4313 together permit American to not reemploy General

5

Harwood until the full § 4313 analysis is complete and a suitable alternative position identified. *Id.*

In support of this statutory reading, American relies on language in the statute, regulations arising from USERRA, and case law. First, American contends that the plain language of the statutes supports its position. *Id.* Second, American contends that 20 C.F.R. § 1002.191, .192, and .226 support its position that an employer must evaluate not just reemployment eligibility but reemployment eligibility for a specific position prior to re-hiring a USERRA-covered employee. *Id.*, p. 7-8. Third, American cites to *Francis v. Booz, Allen & Hamilton, Inc.*, 452 F.3d 299 (4th Cir. 2006) and *Butts v. Prince Willaim Cty. Sch. Bd.*, 844 F.3d 424 (4th Cir. 2016) for the proposition that both § 4312 and § 4313 govern at the time of re-hire. *Id.*, p. 8-9.

The Court finds American's arguments unavailing. In advancing its argument, American concedes, as it must, that it failed to abide by § 4312's explicit requirement that an employee who meets § 4312's statutory requirements be reemployed. Plainly, then, American concedes that it violated § 4312 by failing to promptly re-employ General Harwood on September 1, 2015. American seems to want to read § 4312 and § 4313 together as a single statute; they are not. While American notes correctly that USERRA should be read holistically, courts must also construe USERRA's protections in favor of returning service members. *See Francis*, 452 F.3d at 303; *Hill v. Michelin N. Am., Inc.*, 252 F.3d 307, 312-13 (4th Cir. 2001). Importantly, the purpose of a holistic reading is to give full effect to the protections afforded by the statutory scheme. *Francis*, 452 F.3d at 303 ("USERRA provides a multi-tiered and "comprehensive remedial scheme to ensure the employment and reemployment rights of those called upon to serve in the armed forces of the United States.") (quoting *Morris-Hayes v. Bd. of Educ.*, 423 F.3d

153, 160 (2d Cir. 2005)).

Under a holistic reading that broadly construes USERRA's protections, Section 4313 does not add a complex fifth requirement to § 4312's list, and qualification issues addressed by § 4313 never appear in § 4312(d)(1)'s exclusions. *See* § 4312(d)(1) (allowing an employer to not reemploy a USERRA-covered person where reemployment would be impossible or unreasonable). There is no doubt that American is entitled to engage in a § 4313 analysis upon learning that General Harwood cannot fly airplanes because he lacks a first class medical certificate from the FAA. But the plain language of the statutes required American to re-employ General Harwood on September 1, 2015, even if American had not yet identified an appropriate position for him under a § 4313.

The various sections of the Code of Federal Regulations and the case law cited to by American are consistent with this reading. For instance, in *Butts*, the Fourth Circuit interpreted § 4312 and § 4313 to be a two-step process: "[i]f a veteran satisfied the [§ 4312] criteria, then Section 4313 sets forth the rights under Section 4312 – namely, the specific position to which veterans are entitled upon their return." 844 F.3d at 430. In *Francis*, Judge Hilton clarified that §§ 4312 and 4313 operate at the time of reemployment, while §§ 4311 and 4316 protect employees after rehire. 452 F.3d at 304. While they may operate together at the time of reemployment, § 4313 cannot be fairly read to wholly excuse an employer of its express obligation to reemploy under § 4312.

While 20 C.F.R. § 1002.198 specifies that "[t]he employer is not required to reemploy the employee on his or her return from service if he or she cannot, after reasonable efforts by the employer, qualify for the appropriate reemployment position," the regulation also requires the employer to make "reasonable efforts to help the employee become qualified to perform the

7

duties of this position." The parties debate whether American could have taken steps to help General Harwood become qualified for his escalator position. The Court need not make a finding on that question. The regulation can only be read to permit an employer to not reemploy a returning employee *into a position* for which the employee is not qualified – it cannot be read as an escape hatch from § 4312's explicit reemployment requirement.

As a factual matter, American contends that the delay between September 1, 2015, when Harwood presented himself for reemployment, and the official offer of an alternative position in late October is attributable to General Harwood's decision to not engage with American in the § 4313 process. Yet the record is clear that General Harwood, after not being promptly reemployed in violation of § 4312, shifted to a litigation posture. This decision does not insulate American from § 4312 liability – the § 4312 violation occurred at the time General Harwood was not reemployed on September 1, since any delay was the result of American's impermissible decision to add return-to-work requirements and was therefore unreasonable.

By reading into § 4312 a requirement that General Harwood qualify for the specific position of reemployment prior to that reemployment, American unlawfully imposed a prerequisite to General Harwood's reemployment. *See Petty v. Metro. Gov't of Nashville-Davidson Cty.*, 538 F.3d 431, 441-42 (6th Cir. 2008); *Brown v. Prairie Farms Dairy, Inc.*, 872 F.Supp.2d 637, 643 (6th Cir. 2012). American failed to re-employ General Harwood on September 1 in violation of § 4312. Accordingly, General Harwood is entitled to summary judgment on Count II of the Amended Complaint.

*Section 4313*

Because American plainly had an obligation to reemploy General Harwood under § 4312 and it failed to so reemploy him into any position, American also violated § 4313. *See Brown v.*

*Prairie Farms Dairy, Inc*, 872 F.Supp.2d 637, 645 (M.D. Tenn. 2012). As noted *supra*, American's contention that General Harwood failed to engage in an interactive § 4313 process is unavailing where General Harwood necessarily sought out legal counsel in the face of what was, as of September 1, a USERRA violation.

*Liquidated Damages*

While clear that American violated both § 4312 and § 4313 in its actions toward General Harwood, there is simply no evidence that American or any of its agents acted unreasonably and in bad faith. Accordingly, liquidated damaged are not applicable to the facts of this case. *See Davis v. Crothall Servs. Grp., Inc.*, 961 F.Supp.2d 716, 735 (W.D. Pa. 2013).

### IV. Conclusion

For these reasons, the reasons stated from the bench during the hearing, and for good cause shown, Plaintiff's motion summary judgment is **GRANTED in part** for the Plaintiff as to Counts II and III of the Amended Complaint and **DENIED** as to Defendant's affirmative defense to liquidated damages that it acted reasonably and in good faith and that its actions were not willful. Defendant's motion for summary judgment is **DENIED in part** on Counts II and III of the Amended Aomplaint and **GRANTED in part** on its affirmative defense to liquidated damages that it acted reasonably and in good faith and that its actions were not willful. A separate Order will issue.

It is **SO ORDERED**.

May 23, 2018
Alexandria, Virginia

Liam O'Grady
United States District Judge